Good morning, your honors. May it please the court, Elizabeth Richardson Royer on behalf of Michael Snyder. Mr. Snyder has raised a number of issues in this case, and this morning I plan to focus on the two instructional errors, although of course I'm happy to answer questions about the other claims as well. The first error that I plan to discuss is the court's failure to give Mr. Snyder's requested instruction on what a household means under the Social Security regulatory scheme. The second error is the court's plain error in instructing the jury that in order to prove a violation of 18 U.S.C. section 1001, the government did not need to prove that Mr. Snyder knew his conduct was unlawful. Turning now to the first error, this really gets at the heart of the case, because the instructional error had to do with whether Mr. Snyder's wife, Essie Binger, whether her income could be deemed to Mr. Snyder such that he would no longer be eligible for Social Security income payments. Supplemental security. Supplemental security. There's a difference. Yes, you're right. And so whether her income could be deemed to him was the critical matter for all of the counts in this case. Now the regulations in 20 CFR section 416.1160 say that her income should be deemed to him if they share a household, but that section, which has to do with the deeming of income, does not define household, and it gives no guidance as to how a jury should determine where Mr. Snyder's household is. And so what the district court did in this case was turn to another section of the regulation, the section having to do with in-kind support and maintenance, and took the definition of household from there. The first part is that the household is the primary residence, but the court didn't stop there. There's another section of the in-kind support and maintenance part of the regulation that sets forth five factors, any of which can indicate that a household is present, and the court took just one of those factors and instructed the jury that if that factor is present, that's where the household is, and that factor is whether the recipient, Mr. Snyder, or his spouse is responsible for part of a rental payment. And what Mr. Snyder wanted was to set forth all of those factors, particularly the factor that states that if he pays a pro rata share of the household expenses, that is where his household is, and the court refused to give that instruction. As a result, Mr. Snyder was denied the opportunity to have the jury consider his defense, which was that he split his time between his wife's home and his mother's home, but that he was responsible for household expenses only where his mother lived, and that that is where his household was for purposes of the Social Security scheme. What was the evidence that he contributed to the household expenses? At his mother's home? Yes. There was testimony from Mr. Snyder's nephew, Travis Venables, that Mr. Snyder and his mother split all of the household expenses 50-50, and that is the rent, and that is groceries, bills, all of the expenses. And in addition, in the application for the disability benefits, Mr. Snyder listed household expenses, and there are a number of questions in the redetermination application that forms the basis for the charges in this case that ask about household expenses. Was there actual evidence that he paid rent or utilities or anything like that? There was evidence in the form of testimony, which was before the jury and which would have permitted the jury to find that he did make those payments. I believe there was not any, you know, receipts or bank account information. Checks or anything? Checks or anything like that. But it was uncontroverted. Even the government's witnesses who testified about Mr. Snyder living with his wife indicated that he didn't pay anything there and that they knew he was supporting his mother. And so this is really a point that he was financially supporting that household is not something that was contradicted. I thought the evidence had to do with food expenses. He would help out with groceries and then help out with the caretaking. But you're saying that there was specific evidence in the record that he contributed to the rent for his mother's location? Yes, Your Honor. The nephew testified that they split that 50-50, and in the reapplication questionnaire, he also indicated that he contributed toward the rent. And so the court's denial of this requested instruction really deprived Mr. Snyder of the opportunity to establish where his household was and essentially directed a verdict by telling the jury that as long as Mr. Snyder or his spouse paid rent somewhere, that's where his household was, full stop. The second issue that I... What was the instruction that he proposed? He proposed an instruction that said... And actually, let me grab my excerpt here so I can read it. He proposed an instruction that listed all five of the factors as things the jury could consider in determining where his household was. Do you have a copy of the Ninth Circuit model jury instruction? There is no model jury instruction for the other claim, the willfulness claim. No, for the 1001 claim. Yes, and that's the second claim that I plan to talk about, and I'm happy to turn to that claim now if Your Honors are... No, no. The instruction, his proposed instruction, just listed all the food, utilities, rent. Right, and I will tell you exactly where it is. At excerpt of record page 36, the requested instruction was factors that you should consider in determining whether two individuals are... Oh, sorry, wrong one. In determining in what household an individual lives include, when applicable, the following. And then it lists all five of the factors, including the first one, where an individual is liable to the landlord for payment of any part of the rental charges, which is the one that the district court pulled out. And the one that really went to the heart of his defense, which was where an individual is liable for a share of household operating expenses. Was he on the lease? He was on the lease at various points in time, including part of the time for which the government asserted that he was receiving benefits unlawfully. And so he was on the lease until December 6, 2007, which is when the nephew came onto the lease. And that's halfway through, or part of the way through, the period from October 2007 to May 2008. He was on the lease for many years prior to that as the caretaker for his mother. Well, was he on the lease as a co-tenant? He was listed as a co-tenant on the lease, which is what... And he was obligated to pay the rent. I don't... If she didn't pay the rent, was he obligated? Could the landlord have sued him for nonpayment of rent? I'm not sure. He was listed on the lease as a resident, which is required under the Section 8 Housing Authority rules if he's to live there with his mother. He had to be listed on the lease. I'm not certain what the recourse the property manager would have had if the rent hadn't been paid. Sounds like it's only against the mother. That may perhaps be true. And so it may be that that... Was he on the utility bills? I don't believe so. And so I think what Your Honor is getting at is that the factor that the district court cared about, that is where rental payment is due, may not have applied with respect to his mother's household. But the other factor, that is where he contributed to household expenses, the evidence is uncontroverted that he did contribute at that place. Giving money to his mother. By giving money to his mother, by buying the groceries, by contributing 50-50, as the evidence showed, to the operation of that household. Go turn to Judge Gregersen's question, which he had on. The next issue you wanted to discuss. Right. And so the next issue is what willfulness means under 18 U.S.C. Section 1001. And Your Honor is correct that at the time that the instruction was given, the Ninth Circuit model instruction was what the district court essentially gave in this case, which was that willfulness only requires that the action be knowing and deliberate. And I believe that even at that time, and now in particular, that instruction is plainly erroneous in light of the Supreme Court's decision in Bryan v. United States, which was issued in 1998. And that case had to do with willfulness in statute, very like this one where the court gave an instruction, very like the one given in this case that knowledge of unlawfulness was not required. And the Supreme Court said that as a general matter in criminal statutes, willfulness has to have the knowledge of unlawfulness. And this court has applied that in cases that involve similar statutes to the one at issue here subsequent to Bryan in United States v. Awad and United States v. Berry. In both of those cases, the court had no trouble applying Bryan and saying Bryan requires that willfulness, that knowledge of unlawfulness be shown where there's willfulness. Even if it's error, it's still subject to a harmlessness analysis, right? Yes. So the evidence in this case seems pretty compelling. Can you address whether there's harm in this case? There is evidence that a false statement was made. There's strong evidence that there was a false statement regarding Mr. Snyder's marriage to S.E. Banger. The question is what evidence was there that he knew that making that statement was unlawful. And really the only evidence, really by inference, the repeated lies about his marital status and his living arrangements, doesn't that all lead to inference that he knew the conduct was unlawful and that's why he tried to conceal it? I think there might be an inference that he knew it was wrongful or that he knew he wasn't being honest. I don't think the jury necessarily found that he knew this was a crime, that he knew this was unlawful in a criminal sense. And really it's just this boilerplate that is evidence that he knew it was a crime, a federal crime, to make false statements on these forms. And the jury could have credited that and said this is a person who knew he was committing a crime right here. And the jury also could not have credited that. And the jury could have said this is someone who's really confused. He tells the administration that he is married in August 2007. In December 2007 he says he isn't. In May he says he is. Then he goes back and forth. His wife testified that he wasn't mentally all there. The jury could have said I'm not sure, beyond a reasonable doubt, that he knew his conduct was unlawful as opposed to wrongful, correctable. He said, oh, I'm willing to pay it back. He might have just thought it was sort of an administrative error that could be corrected instead of a federal criminal offense. And that is the standard for harmlessness, is whether the jury necessarily found the element. And I think here, while the jury could have found it, and there's no question about that, it didn't necessarily. Were there any admonishment or advisement on the reapplication form? You know, he went down to the Social Security and they had him do another redetermination. Was there a certification at the bottom of the form? Yes, and that's the boilerplate that I'm talking about. What did it say? It said, let me actually pull it up. It said, I understand that anyone who knowingly lies or misrepresents the truth or arranges for someone to knowingly lie or misrepresent the truth is committing a crime which can be punished under federal law, state law, or both. And in that form he said he wasn't married? Right. And there's no question that that certification exists and that he signed his name under it, which the jury could find meant that he had read it and understood it and subjectively knew his conduct was unlawful. But it's a subjective standard here. It's not constructive knowledge we're concerned with. It's not what somebody would have thought. It's what this individual thought, and these are complicated forms. This is an individual who's maybe not thinking things through. So I submit the jury could have found that he didn't know. Would you like to save the balance of your time? I would. I just wanted to ask you a question. Do you have the instruction on the elements of 1001 that was given? Do you have any problems with that instruction? With the instruction on the instruction? The elements, the elements. No, Your Honor. The instruction on the elements themselves we don't object to. It's the definition that the court gave of what willfulness means that is erroneous under Bryan v. United States. Repeat that argument for me slowly, would you? Okay. Okay. Here's the comment on the latest edition of false statement to government agency that's in our model Ninth Circuit instruction. And here's, we come to the second element. Second, the defendant acted willfully. That is, the defendant acted deliberately and with knowledge, both that the statement was untrue and that his or her conduct was unlawful. Are those words in the instruction that was given? No, Your Honor. Now then you go further down in this looking under comment. And here's a paragraph. To make a false statement willfully under Section 1001, the defendant must have both the specific intent, specific intent to make a false statement and the knowledge that his or her conduct was unlawful. Now was that part of the instruction that was given? No, Your Honor. And so this is a critical point. This whole Section 1001 casts a very wide net. And it's a specific intent crime. But yet the jury isn't told that you have to have the specific intent to do et cetera, et cetera, et cetera. And was that argued to the jury? Was specific intent argued to the jury? It was not, Your Honor. And the instruction that you are reviewing has been modified since it was given in Mr. Snyder's case. Mr. Snyder's case did not have the language that the defendant must know it to be unlawful or that the defendant must have specific intent. That has been added subsequently. If that instruction had been given, we would have no issue whatsoever. It's the absence of the requirement that the defendant know it to be unlawful that's a problem. And, in fact, it was worse in Mr. Snyder's case because the court actually instructed the jury the government is not required to prove that defendant knew his acts or omissions were unlawful. And in light of Bryan v. United States, that is incorrect as the model jury instruction now reflects. Thank you. Well, what about a retroactive application? The law has been clarified now, right? Right. Not clear when this trial took place. The trial took place in 2014, but the authority... And this was approved 6, 2014. Right. And when was the trial? The trial was, I believe it was May, but I want to be sure, April. April. 2014. But the question about plain error is whether it's plain at the time of appellate consideration, which is today. And so even under the model jury instruction, it's been clear for at least 2 years. I submit it's been clear since Bryan v. United States was decided in 1998. Thank you. I'll give you a minute for giving any questions. I'm worried about that section for a long time. You know, the federal criminal laws are a mess. You don't know what a general intent crime, a specific intent crime, or whatever it is. And there was a great effort made back in the early, well, in the 1960s, and there was a committee that, a group that was put together, and it was headed by Pat Brown, the governor. Do you know about this? No. Yeah. And they produced a whole called Senate Bill 1, about that thick, and they attempted to clarify and straighten out this whole business of instructions, but it never went anywhere. And so I read that because the first case I ever sat on with the Ninth Circuit was U.S. v. Roy. And not being so sure of what I was really doing, I'm saying that, take it for what it's worth, but it was a case involving threats against the life of the president. And so the other two, I was on the district court then, and so I wrote this opinion, and as I recall, I did talk about specific intent. And so I remember reading Pat Brown's draft, and there it was, he cited my case. And so I was very happy about that. But that bill never got passed, and the mess is still with us. And whether we have an opportunity to straighten that out, as far as 1001 is concerned, that's another matter. Because we do have a case that we'd have to maybe have an in-bank call or there may be other ways to handle it. But I've been interested in this subject for a long time. There's a lot been written on it. Well, I would love to address the case that I think Your Honor mentioned just now, but I will do that in the time I have for rebuttal. Thank you. Thank you. Let's hear from the government. I thought she was the government. No, you're not the government. This is the government. For better or worse. Yeah, the government in all its glory. Good morning, Your Honors. May it please the Court. Diana Kwok for the United States. If the Court has no objection, I will go ahead and address the same two issues that defense counsel addressed, starting with the jury instruction regarding the definition of a household. What I believe counsel tried to do in proposing this particular instruction was to, for lack of a better analogy, take a piece from one puzzle and drop it into another. That is, as counsel suggested, the benefits scheme that was at issue here was the supplemental security income that defendant was receiving. Because he was married to his wife and living with her. His wife's income was deemed to him because they were married and, the government contends, they were living together. The word household is used in that regulatory scheme, but the term household, as used by defense counsel or as defense counsel tried to apply, was taken from another set of regulations under SSI for what they call in-kind benefits. So in-kind benefits deal with, say, a long-term house guest or a couch surfer who's receiving benefits like food and shelter for free. Under those circumstances, that person's SSI is reduced by one-third. But that is not the regulatory scheme that we were dealing with during this trial, which was the deeming. So if you look at the regulation that defense counsel was referring to, that is 20 CFR 416.1132, it lists a number of factors, namely if you own the place, if you pay rent at the place, if you pay a prorata share of the expenses at the place, then you're not receiving in-kind benefits from a third party. Rather, you are paying your own way, you are living in your own household. If, as counsel seems to suggest, this definition of household is just applied to every other portion of the regulatory scheme, it doesn't make sense anymore. Because the question for the deeming is, where was this SSI recipient living? It's a very basic question. And if I was to say, in my dreams, own five houses, and I have an ownership interest in all five houses, under this definition of household in 416.1132, I apparently belong to five different households. That is simply not true. Because where I live is completely different from the property that I own. So, Your Honors, we would submit that the statutory scheme that defendant was trying to use to fit into the deeming income regulatory scheme was simply incorrect. So it wasn't supported by the law, and that instruction that defense counsel was proposing was simply erroneous. So the judge did give a definition of household, though? The judge did give a definition of household. Why was it necessary to give that instruction here? The government did not propose that an instruction be given for household. To the extent that an instruction was given, the government proposed that the definition of household being personal place of residence, be all that was given. However, because defense counsel was pushing for this particular instruction and more explanation for the jurors, this instruction was ultimately given to the jury. Well, the question for me really is whether the instruction that was denied to defense counsel fits the evidence that they were able to present. Now, counsel in her argument indicated that there was clear testimony in the record that he was paying 50% of household expenses, including, I guess, rent and utilities. And I thought in viewing the record, and I'm looking at the portion of counsel's opening statement that summarized the evidence on household, I thought it was payment of groceries and taking care of her and all that, and that there wasn't testimony of rent and utilities. Can you clarify that for me? Yes, Your Honor, if I may just get my ER. So, at ER 530, Your Honors, the defendant's nephew says him, referring to the defendant, and my grandmother did a 50-50 thing with the food, and he would go run the errands and all that. So that, Your Honor, is... Right, so that's the only portion that I was aware of, 50-50 for the food and then running errands, and they would help take care of her and all that. Yes, that is correct. There was limited cross-examination of the government's witnesses, namely Essie Binger and her children, regarding whether they knew if defendant was paying for utility bills at his mother's apartment. The one piece of evidence that came out was that Essie Binger said that she believed he was paying for the cable bill at his mother's apartment because he liked to go over there and watch wrestling. But that was the extent of it. Let me ask you regarding willfulness. The government has taken a position, through the brief filed by the Solicitor General in Juku 1, and I think that there was a recent cert petition where the government weighed in taking the same position, that for all intents and purposes, the definition of willfulness for Section 1035 is the same as willfulness for Section 1001, right? That is correct. Why is the government taking a contrary position in this case? Because although the Solicitor General said that he believes the definition should be the same, that is not what this Court has held. So we are still bound by this Court's precedent, which continues to be that 1035 and 1001 are different statutes, different issues, and just most... I understand that the government is taking a position that, well, I'm in the Ninth Circuit. There seems to be this precedent out there. Whether the precedent is clearly irreconcilable with subsequent change in law is a subsequent issue. But what I'm asking you is a different question. Setting aside whether the government believes that we're still bound by our circuit precedent, you have taken a position which the Supreme Court has characterized as confessing error. Why isn't the government confessing error in this case to say the landscape has changed? It's now our belief that for all intent and purposes, the definition is the same. Not that at some point it changed, but that it was always intended to be that knowledge of unlawfulness is a necessary element of the 1001 statute. So I guess the timing of this case comes into play, Your Honor, because this trial took place in November 2013 before the Solicitor General took that position. While I understand that Your Honor is asking why aren't we taking the same position as the Solicitor General now, the fact is that we didn't believe that there was error committed at the trial court level when the trial actually took place.  based on this court's precedent. So while we would welcome the court changing its opinion on the definition of 1001 and knowledge of unlawfulness and its requirements within 1001, at this point in time, Your Honor, we are bound by the court's precedent. Judge Ferguson just went over the new model jury instructions, and the Ninth Circuit Jury Committee basically has revised 1001 jury instructions. So doesn't that pretty much signal a change? It does, Your Honor, but the cases still indicate that 1035 and 1001 are a little bit different. Well, there was a 1001 charge here. Yes. Count 9. Yes. Right? Counts 1 through 8 were the other charge. Yes, Your Honor. But just recently in United States v. Eglash, this court said that Ajoku did not disrupt the well-established principle that 18 U.S.C. section 1001 requires only that the defendant act deliberately and with knowledge, and that was filed as recently as February 17th of this year. So that was very brief. The government doesn't believe that to be the case, right? You're just saying sitting here as a three-judge panel we can't do anything about it because of, I think, Eglash was that case's name and a couple of other unpublished decisions that follow along the same lines, but you're saying that's not the government's position. Yes. I guess you can say that the government's position is what the Solicitor General said, and that is that knowledge of unlawfulness should apply, but given that we are bound by this court's precedent and we don't make the law, this court does instead. We can't say that this court We can't just say we're stuck with it, that the government doesn't believe that to be the case. I suppose that is true, Your Honor. Attorney, do you have any questions there on this 101? That's the way we solve our nation's problems. We prosecute the poor and we let the rich get their bonuses, the bankers and all that. I would like to think that that wasn't the case here, Your Honor. It's happening, isn't it? I think one of the first cases I had was a Social Security case, and I had great assistant U.S. attorneys. One was Waters and the other, I'll think of his name, they put two guys on it together at the same time, and the other was, I'll think of his name, he went on to sit on the California Court of Appeals and it was a case where a daughter lived with her mother and they were both getting welfare and had a lot of kids. Then the mom died and she needed that extra income just to buy food or whatever it was. And so she would endorse her mother's check and the rest of the republic came down on her head. Got convicted, too. Here, Your Honor, I'd submit that we were trying to do the opposite. That is, we were trying to protect benefits for those who deserve them. I know that. I'm just being a little facetious. If you turn to the evidence, let's assume there was error. It would be harmless. It wouldn't necessarily have to be a retrial. Yes, that is correct, Your Honor. Is it harmless beyond a reasonable doubt? We believe so, Your Honor. Okay, so tell me why it's harmless beyond a reasonable doubt. We believe it's harmless beyond a reasonable doubt because there is evidence in the record, as Your Honor has seen, that defendants signed statements saying that he understood that the statements that he was making on those eligibility questionnaires were statements that he would be held to and that he could be prosecuted for if he made misrepresentations or was lying. Now, what was the evidence surrounding his signing of that statement? Was he at the Social Security office or was he at home by himself? He was actually present at the Social Security office, and the Social Security office employee that spoke with him that day specifically warned him that once he signed that document, he would be held to his statements, so he needed to read those statements very, very carefully. He was told that again when he signed a subsequent form, Your Honor, for retirement benefits that day. So he knew that he was obligated to read the form that he was signing and that he would be held to the statements that he was making that day. When he filled out the form, did he fill it out himself or did the worker complete the form for him? The way it worked, according to the testimony, Your Honor, is that defendant came into the office. He'd sit in the chair at a desk with the representative. The representative would ask him the questions from the computer screen. Defendant would then give his responses. The representative would input those responses into the computer, and at the end, the representative would print out the responses that he received from the defendant, at which point the defendant was warned, you need to read over all of this very carefully because all the statements therein are statements that you'll be bound by. And one of the questions that was asked in that scenario was, are you married? That is correct. And he said no. He also said when he was asked where he was living, he said that he was living with his mother. What other evidence was there that he knew? That his statements were unlawful? Unlawful. Your Honor, if I may, I might go over time just a little bit. Just go ahead. That's fine. But the fact that defendant went into the Social Security office prior to this occasion when he signed these documents and specifically asked the same representative, you know, what happens if my friend is married and the woman that he's married to might make a really high income, say $90,000. And at that point, the Social Security representative specifically told him, well, your friend needs to report that marriage and your friend may be disqualified from receiving SSI benefits any longer. That conversation, Your Honor, we would submit shows that defendant knew that stealing SSI benefits from the government wasn't lawful. Well, it may have been that it could be. You could infer that all that meant was that he knew that it was wrong to collect. He wouldn't be eligible to collect benefits if he had to disclose that he was married. Correct. But in order to receive those benefits, he would have had to lie to the representative and on the form  What's the monthly SSI benefits that he was getting? I believe it was somewhere in the neighborhood of $600-some, Your Honor. I could be mistaken. No, that's fine. That sounds about right. Anything else? If there are no further questions. Okay, we'll take it from here. Thank you. I'll give you, just let me have one, Defense Counselor, Chancellor. Do you have any rebuttal you want to? Okay, go ahead. Thank you, Your Honor. I'm going to try to make three points very briefly. The first is that while the government says that the defense's requested instruction on household is a piece from one puzzle into another, that was already the case. The instruction that the court did give was lifted from the in-kind support and maintenance section already. The instruction that the government wanted, that is, a household is a personal place of residence, that is already language lifted from the in-kind support and maintenance section. And so the government's contention that that section should have been ignored really is without basis given what actually happened in this case. The second point that I'd like to make is with respect to the payment of rent. At excerpt of record, page 47 and 48 in the redetermination questionnaire. This is for Section 8 housing? This is for Mr. Snyder's eligibility for SSI benefits. The form says that the rent amount was $330 and the food amount was $300. Mr. Snyder paid half of that amount, which was $315 every month. So he is contributing to the rent and to the other expenses. That's what he told Social Security? That's the only evidence that we have in this case. There's no evidence to the contrary. And the final point that I'd like to make is the government's contention that the statutes 1001 and 1035 are different substantively is entirely without basis. They are different only in that there is a jurisdictional requirement for 1035 and that it applies to Medicare. Substantively, as this court has held, they are identical. And so there is no reason for a remand in OJOCU based on an erroneous instruction in that case and a finding that there was no error in this case. Those statutes are the same and they should be treated the same by this court. They've been construed together. They've been construed together. And, in fact, in 1035 cases, this court has cited to Carrier and to Toyin those 1001 cases that the government is trying to rely on. Now, they're treated interchangeably. They're treated the same by this court. He was convicted of 641 for counts 1 through 8, correct? That's correct. And the willfulness argument here has to do only with count 9, only with the 1001 count. Thank you. Okay. We're going to take a short 15-minute recess.
judges: Pregerson, Paez, Nguyen